# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Kevin M Oleksy,<br><br>　　　　　　　　　　　　Debtor(s). | C/A No. 22-00172-EG<br><br>Adv. Pro. No. 22-80030-EG<br><br>Chapter 7<br><br>**ORDER** |
| Michelle Vieira, Chapter 7 Trustee<br><br>　　　　　　　　　　　　Plaintiff(s),<br><br>v.<br><br>Lori Marie Oleksy and<br>Pentagon Federal Credit Union,<br><br>　　　　　　　　　　　　Defendant(s). | |

**THIS MATTER** is before the Court on the Motions for Judgment on the Pleadings ("Motions") filed by the Defendants, Pentagon Federal Credit Union ("Pentagon") and Lori Oleksy ("Ms. Oleksy") (collectively, the "Defendants").[1] The Plaintiff, the Chapter 7 Trustee appointed in this case (the "Trustee"), filed an Objection to the Motions.[2] For the reasons set forth below, the Court denies the Motions.

## STATEMENTS OF FACT[3]

The Trustee alleges that on or about April 13, 2018, the Debtor, Kevin M. Oleksy, and his spouse, Ms. Oleksy, acquired property located at 164 Ocean Commons Drive, Surfside Beach, SC 29575 (the "House"). To acquire the House, the Debtor took money from one of his bank accounts

---

[1] ECF No. 28 and 29, filed September 6, 2022.
[2] ECF No. 30, filed September 19, 2022.
[3] In reviewing a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), which is made applicable to this proceeding by Fed. R. Bankr. P. 7012(b), the Court accepts all well-pleaded allegations as true and views the complaint in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). Accordingly, the facts set forth below are derived from the allegations in the Complaint, the facts that are established by the exhibits attached to the pleadings and motions before the Court, and public records (including the Court's docket), of which the Court takes judicial notice pursuant to Fed. R. Evid. 201.

for a down payment and received financing for the remainder of the purchase price. The Debtor executed a promissory note secured by a mortgage on the House. The mortgage was executed by the Debtor and Ms. Oleksy. Ms. Oleksy, however, did not sign the promissory note or otherwise contribute to the purchase price of the House, but was placed on the title to the House, as a joint owner. The Trustee alleges that Ms. Oleksy acquired a one-half undivided interest in the House for no consideration. The Debtor subsequently refinanced the mortgage in 2019, 2020, and 2021, and remained the only obligor on the loan. Following the most recent refinance, which occurred on or about July 22, 2021, the Trustee alleges that the mortgage was improperly indexed under the last name Olesky, instead of the Debtor's last name, Oleksy.

The Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on January 26, 2022 (the "Petition Date") (C/A No. 22-00172, ECF No. 1), and the Trustee was appointed to act as Chapter 7 Trustee in the bankruptcy case. On June 6, 2022, the Trustee filed the Complaint against the Defendants, alleging that the joint titling of the House in the name of the Debtor and Ms. Oleksy constitutes a transfer of an interest of the Debtor in property, which is avoidable by the Trustee pursuant to S.C. Code § 27-23-10 (the "Statute of Elizabeth") and 11 U.S.C. § 544(b), because the transfer was voluntary, was made without valuable consideration, and was made to a family member and insider of the Debtor at a time when the Debtor was indebted to one or more unsecured creditors with an allowable claim as of the Petition Date (ECF No. 1). The Trustee further alleges that the mortgage was not properly recorded and indexed in the name of the Debtor; thus, she argues that she can avoid the mortgage on the House pursuant to 11 U.S.C. § 544(a), standing in the shoes of a perfected lien creditor or bona fide purchaser. Finally, to the extent the foregoing transfers are avoided, the Trustee seeks to recover the property transferred for

the benefit of the estate pursuant to 11 U.S.C. § 550 and preserve it for the estate pursuant to 11 U.S.C. § 551.

Both Pentagon and Ms. Oleksy filed an Answer to the Complaint (ECF Nos. 8 and 10). Ms. Oleksy subsequently filed an Amended Answer to the Complaint (ECF No. 21), in which she admitted that the proceeding is core by virtue of 28 U.S.C. § 157(b)(2)(A), (H), (K), and/or (O) but indicated she would not consent to the Court entering final orders or judgments in this matter. On August 3, 2022, Pentagon filed a proof of claim against the Debtor, asserting a secured claim in the amount of $263,342.91 (C/A No. 22-00172, Claim No. 7-1, as amended by Claim No. 7-2).

On July 25, 2022, the Court entered an Order (the "Adversary Report Order") requiring the parties to confer pursuant to Fed. R. Civ. P. 26 and requiring them to file an Adversary Proceeding Report by August 15, 2022 (ECF No. 13). Subsequently, the Court entered a Consent Order holding all discovery in abeyance and setting a briefing schedule for the anticipated motions for judgment on the pleadings (ECF No. 26).

On September 6, 2022, Defendants filed the Motions (ECF Nos. 28 and 29). The Trustee filed an Objection to the Motions on September 19, 2022 (ECF No. 30), and a hearing to hear the legal arguments was held on October 13, 2022.

## CONCLUSIONS OF LAW

### I.    JURISDICTION & AUTHORITY TO ENTER FINAL ORDER

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). Ms. Oleksy has not consented to the Court entering final judgments in this matter. This Court has previously concluded that entry of a *final* order or judgment on a fraudulent conveyance cause of action against a party who has not filed a claim against the bankruptcy estate without the express consent of the parties would be inconsistent with Article III of the United States Constitution. *In*

3

*re Pigg*, 515 B.R. 274, 277 (Bankr. D.S.C. 2014) (citing *Stern v. Marshall*, 564 U.S. 462 (2011)), *aff'd*, C/A No. 3:14–cv–03210-JFA, 2014 WL 4536642 (D.S.C. Sept. 9, 2014); *Granfinanciera v. Nordberg*, 492 U.S. 33, 43–47, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989); *Off. Comm. of Unsecured Creditors v. Nat'l Patent Dev. Corp. (In re TMG Liquidation Co.)*, C/A No. 7:12–629–TMC, 2012 WL 1986526, at *2 (D.S.C. June 4, 2012). "[W]hen a bankruptcy court is presented with [a claim designated for final adjudication in the bankruptcy court as a statutory matter but prohibited from proceeding in that way as a constitutional matter], the proper course is to issue proposed findings of fact and conclusions of law. The district court will then review the claim *de novo* and enter judgment. This approach accords with the bankruptcy statute and does not implicate the constitutional defect identified by *Stern*." *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 31 (2014).

In light of the denial of the motions for judgment on the pleadings, which is an interlocutory order, the Court concludes that the submission of proposed findings of fact and conclusions of law to the district court is not necessary at this stage of the proceedings. *Tisdale v. South Carolina*, 157 F. App'x 593, 593 (4th Cir. 2005) (concluding that an order denying motion for judgment on the pleadings was neither a final order nor an appealable interlocutory or collateral order); *In re Belmonte*, 551 B.R. 723, 726 (Bankr. E.D.N.Y. 2016) (finding that an order denying the defendants' motion for judgment on the pleadings was interlocutory, not final, and as such, proposed findings of fact and conclusions of law need not be submitted to the district court).

**II.    RULE 12(c) STANDARD**

Fed. R. Bankr. P. 7012(b) provides that Fed. R. Civ. P. 12(b) – (i) applies to adversary proceedings. In turn, Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." A judgment

on the pleadings is warranted if "'the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'" *Fowler v. State Farm Mut. Auto. Ins. Co.*, 300 F. Supp. 3d 751, 755 (D.S.C. 2017) (quotation omitted), *aff'd*, 759 F. App'x 160 (4th Cir. 2019); *Thomas Daniels Agency, Inc. v. Nationwide Ins. Co. of Am.*, 122 F. Supp. 3d 448, 450 (D.S.C. 2015) (quotation omitted). Said differently, motions for judgment on the pleadings "operate to 'dispose of cases in which there is no substantive dispute that warrants the litigants and the court proceeding further.'" *Id.* Under Fed. R. Civ. P. 12(c), a motion for judgment on the pleadings is "intended to test the legal sufficiency of the complaint and will operate to dispose of claims" where material facts are undisputed and a judgment on the merits is possible merely by considering the contents of the pleadings." *Middleton v. Andino*, 474 F. Supp. 3d 768, 771 (D.S.C. 2020).

A motion for judgment on the pleadings is decided under the same standard as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Deutsche Bank Nat'l Trust Co. v. IRS*, 361 F. App'x 527, 529 (4th Cir. 2010). Like motions filed under Rule 12(b)(6), motions pursuant to Rule 12(c) call for the pleadings to be construed in the light most favorable to the non-moving party – in this case, the Plaintiff. *See Thomas Daniels Agency, Inc. v. Nationwide Ins. Co. of Am.*, 122 F. Supp. 3d at 451 (citing *Burbach Broad. Co. v. Elkins Radion Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The one key difference between a motion to dismiss under Fed. R. Civ. P.

5

12(b)(6) and a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is that in the latter, the court considers the answer, the complaint, and documents incorporated by reference in the pleadings. *Id.* As the Fourth Circuit has noted, in resolving a motion for judgment on the pleadings, a court cannot consider matters outside the pleadings without converting the motion into one for summary judgment; a court, however, can consider documents attached to the motion to dismiss, "so long as they are integral to the complaint and authentic." *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013).

### III.   DISCUSSION

The only issue raised in the Motions is that the Trustee cannot prevail on her claim under 11 U.S.C. § 544(b) and the Statute of Elizabeth (S.C. Code Ann. § 27-23-10) because there was no transfer or conveyance as a matter of law.[4] The Trustee alleges that the joint titling of the House in the name of the Debtor and Ms. Oleksy constitutes a transfer of an interest of the Debtor in property.

Pursuant to 11 U.S.C. § 544, a trustee has special powers to avoid certain transfers. More specifically, section 544(b) provides that:

> [T]he trustee may avoid any *transfer* of an interest of the debtor in property or any obligation incurred by the debtor that is voidable *under applicable law* by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b) (emphasis added). Section 544 does not *per se* establish substantive provisions for the avoidance of transfers by a trustee but rather "gives the Trustee the status of a creditor under state law and allows nonbankruptcy law to determine the rights that accrue as a result of that

---

[4] Although the first cause of action was asserted only against Ms. Oleksy, Pentagon asserts that it would be affected by the relief sought because it has a mortgage on the House.

6

created status." *In re J. R. Deans Co., Inc.*, 249 B.R. 121, 129 (Bankr. D.S.C. 2000). In South Carolina, § 27-23-10, commonly known as the Statute of Elizabeth, provides:

> Every gift, grant, alienation, bargain, transfer, and conveyance of lands, tenements, or hereditaments, goods and chattels or any of them, or of any lease, rent, commons, or other profit or charge out of the same, by writing or otherwise, and every bond, suit, judgment, and execution which may be had or made to or for any intent or purpose to delay, hinder, or defraud creditors and others of their just and lawful actions, suits, debts, accounts, damages, penalties, and forfeitures must be deemed and taken (only as against that person or persons, his or their heirs, successors, executors, administrators and assigns, and every one of them whose actions, suits, debts, accounts, damages, penalties, and forfeitures by guileful, covinous, or fraudulent devices and practices are, must, or might be in any ways disturbed, hindered, delayed, or defrauded) to be clearly and utterly void, frustrate and of no effect, any pretense, color, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstanding.

S.C. Code Ann. § 27-23-10. An action for constructive fraudulent conveyance, as the Trustee asserts occurred here, lies under the Statute of Elizabeth when three conditions are met: (1) the debtor makes a voluntary transfer but does not receive valuable consideration in return; (2) the debtor was indebted to a creditor at the time of transfer; and (3) the debtor does not have sufficient property to pay his debt to the creditor in full. *See Anderson v. Architectural Glass Constr., Inc. (In re Pfister)*, C/A No. 09–05670–HB, Adv. Pro. No. 10–80162–HB, 2012 WL 1144540, at *6 (Bankr. D.S.C. Apr. 4, 2012), *aff'd*, 749 F.3d 294 (4th Cir. 2014); *see also In re Ducate*, 369 B.R. 251, 258 (Bankr. D.S.C. 2007) (a constructive fraudulent transfer will be set aside if (1) the grantor was indebted to the plaintiff at the time of the transfer; (2) the conveyance was voluntary; and (3) the grantor failed to retain sufficient property to pay the indebtedness to the plaintiff in full – not merely at the time of the transfer, but in the final analysis when the creditor seeks to collect his

7

debt).[5] Thus, it is fundamental that for a claim under the Statute of Elizabeth to survive there must be a transfer, gift, or other type of conveyance of the property at issue.

Defendants do not dispute that the Debtor and Ms. Oleksy acquired the House on April 13, 2018, and that they were both grantees on the deed. However, Defendants assert that the Debtor never transferred or conveyed the House to Ms. Oleksy. They claim the grantor in the transaction was the third-party seller – not the Debtor. Said differently, according to the Defendants, only the seller, as the grantor on the deed, can conduct a transfer of property, and since in this case only the seller parted with an interest in the House in this transaction, no avoidable transfer occurred. Because no transfer of real estate by the Debtor occurred, the Defendants argue that the fraudulent transfer cause of action under 11 U.S.C. § 544(b) and the Statute of Elizabeth must be dismissed.

The Trustee, on the other hand, has alleged that the joint titling of the House in the names of both the Debtor and Ms. Oleksy constitutes a transfer without valuable consideration because Ms. Oleksy did not contribute any funds and is not personally liable on the note used to purchase the House. The Trustee argues by electing to jointly title the House, instead of taking title solely in his name, the Debtor made a "gift" to his spouse of a one-half undivided interest in the House; as such, the Trustee argues that sufficient allegations were made in the Complaint to establish the "transfer" factor required for a fraudulent conveyance action under the Statute of Elizabeth.

Liability under the Statute of Elizabeth does not appear to be confined to transfers of land by a grantor to a grantee by deed, as the Defendants suggest. The plain language of the statute indicates that it covers a broad range of transfers: transfers by grantor, transfers *by gift*, as well as

---

[5] Under South Carolina law, in considering transfers to insiders or family members on the grounds of constructive fraud, the law imposes the burden on the transferee to establish "both a valuable consideration and the bona fides of the transaction by clear and convincing testimony." *In re S. Textile Knitters*, 65 F. App'x 426, 435 (4th Cir. 2003) (quoting *Windsor Props., Inc. v. Dolphin Head Constr. Co*., 331 S.C. 466, 498 S.E.2d 858, 860 (S.C. 1998)).

8

other types of transfers, by writing *or otherwise*. *See Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014) ("It is a 'fundamental canon of statutory construction' that, 'unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.'") (quoting *Perrin v. U.S.*, 444 U.S. 37, 42 (1979)).

Defendants rely on a South Carolina Supreme Court decision, *Oskin v. Johnson*, as support for their position that the focus of the inquiry for a Statute of Elizabeth claim is on the grantor who conveys an interest in land. 400 S.C. 390, 735 S.E.2d 459 (2012). In *Oskin*, a case dealing with an actual fraudulent conveyance issue focusing on the intent of the grantor, the South Carolina Supreme Court expressly stated that "[t]he Statute of Elizabeth is concerned with the intent of the grantor who conveys an interest in land." *Id.* at 464. The Court finds that Defendants' reliance on *Oskin* is misplaced at this juncture of the case in light of the type of transfer at issue here. In *Oskin*, the South Carolina Supreme Court explained that the Statute of Elizabeth provides for the setting aside of conveyances under two conditions: (1) "where there was valuable consideration and the transfer is made by the grantor with the actual intent to defraud," and (2) "where a transfer is made without actual intent to defraud but without valuable consideration." *Id.* at 463. *Oskin* addressed the first condition: a transfer for valuable consideration. *Id.* at 464 ("It is undisputed that valuable consideration was paid for the transfer of the note and mortgage in this case.") Accordingly, the South Carolina Supreme Court stated that the grantor's intent was relevant to the inquiry in *Oskin*. In this case, however, the Trustee asserts that the transfer of the House was made through the joint titling of the property without valuable consideration from Ms. Oleksy. Therefore, the second condition is at issue here, where the focus of the inquiry is instead on whether the transfer was made with valuable consideration.

*Oskin* also appears factually distinguishable because it involved the purchase and assignment of a mortgage. The facts in *Oskin* were as follows: Oskin entered into a contract to broker the sale of a golf course on behalf of Johnson. Under the terms of the contract, Johnson was required to pay a finder's fee to Oskin upon closing. Oskin found a buyer, the sale closed, but Johnson failed to pay the finder's fee. Oskin brought a lawsuit for breach of contract and obtained a judgment against Johnson. While the breach of contract lawsuit was pending, Johnson purchased an oceanfront property with his uncle, Brown. Johnson and Brown took title as tenants in common and co-signed a note and mortgage to SCB&T to finance the purchase. The note had a balloon payment which became due in full two years after purchase. With the due date on the balloon payment approaching, Brown's wife formed an LLC, obtained a loan, and purchased the note and mortgage from SCB&T, which was assigned to the LLC. This allowed the LLC to assume the SCB&T's priority status as a lien creditor ahead of Oskin's judgment.

Oskin claimed the transfer between SCB&T and the LLC was fraudulent under the Statute of Elizabeth. The Supreme Court rejected Oskin's claim because the grantor who transferred an equitable interest in the property to the LLC was SCB&T, not Brown, and no allegations were made against SCB&T of its intent to defraud Oskin. The South Carolina Supreme Court observed that through the LLC's purchase of the mortgage by providing payment in full to SCB&T, Oskin, as a judgment holder, was left in no worse position than he had been previously if SCB&T had instead foreclosed on the property. The transfer did not change the priorities of the interests in the property and Oskin's judgment remained junior in priority to the mortgage. Since there were no allegations that SCB&T intended to defraud Oskin, the South Carolina Supreme Court held there was no basis for applying the Statute of Elizabeth. The case currently before this Court not only presents a distinguishable set of facts but, notably, the joint titling of the House in both the Debtor's

and Ms. Oleksy's name when the Debtor could be entitled to have sole ownership of the property arguably deprived his creditors of assets which could have been available to pay their claims. Another significant difference from Oskin is that while the Supreme Court of South Carolina decided the case after a bench trial, here the proceeding is still at its early stages and the Court being asked to decide the issue when the facts have yet to be fully developed and issues of fact, such as the intent of the parties, remain.

The Court notes that the broad language of the Statute of Elizabeth does not appear to limit claims to direct transfers from the debtor to another party.[6] Courts in South Carolina have broadly construed the Statute of Elizabeth in light of its broad language and equitable nature. *See, e.g.*, *Fabrica la Estrella S.A. de C.V. v. Banda*, No. 6:05-466, 2007 WL 39428 (D.S.C. Jan. 4, 2007) (finding that a transfer of funds was a fraudulent transfer under the Statute of Elizabeth despite the fact that transfers of funds are not expressly addressed by the Statute); *see also PCS Nitrogen v. Ross Dev. Corp.*, 127 F. Supp. 3d 568, 592-93 (D.S.C. 2015) ("the South Carolina Supreme Court does not view the listing of various specific types of property in the statute as prohibitive.") (citing

---

[6] The Court further observes the Bankruptcy Code does not limit avoidable transfers to direct transfers from a grantor to a grantee. The Trustee seeks to avoid the transfer of the one-half interest in the House to Ms. Oleksy pursuant to 11 U.S.C. § 544(b), which provides: "the trustee may avoid *any transfer* of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law." (emphasis added). Section 101(54)(D) of the Bankruptcy Code defines a "transfer" as "each mode, direct *or indirect*, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or an interest in property." (emphasis added). *See In re 1634 Assocs.*, 157 B.R. 231, 234 (Bankr. S.D.N.Y. 1993) ("The word 'transfer' has. . .been unambiguously defined within the Bankruptcy Code itself to encompass both direct and indirect transfers."). Similarly, the term "transfer," as a noun, is broadly defined in the Black's Law Dictionary as:

> **1.** *Any mode of disposing of or parting with an asset* or an interest in an asset, including a gift, the payment of money, release, lease, or creation of a lien or other encumbrance. • The term embraces every method — *direct or indirect*, absolute or conditional, voluntary or involuntary — of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption. **2.** Negotiation of an instrument according to the forms of law. • The four methods of transfer are by indorsement, by delivery, by assignment, and by *operation of law*. **3.** A conveyance of property or title from one person to another.

Black's Law Dictionary (11th ed. 2019).

11

*Avery v. Wilson*, 47 S.C. 78, 25 S.E. 286, 294 (1896) (holding that the omission from the Statute of Elizabeth as then written "of the words 'goods and chattels' did not enable debtors to practice frauds as to 'goods and chattels' any more than they could as to any other property.")), *vacated in part on other grounds*, Case No. 2:09-cv-03171-MBS, 2018 WL 11424153 (D.S.C. Mar. 8, 2018).

Courts in other jurisdictions examining similar state laws have also found that indirect transfers could be avoidable as fraudulent transfers. *See, e.g.*, *In re Craig*, 144 F.3d 587, 591 (8th Cir. 1998) (holding that the bankruptcy court had defined the term "transfer" too narrowly and holding that "[a] party . . . need not surrender ownership in an asset in order to effectuate a transfer"); *Reilly v. Antonello*, 852 N.W.2d 694, 701 (Minn. Ct. App. 2014) (finding that the Minnesota Uniform Fraudulent Transfer Act is to be interpreted broadly and is intended to apply to indirect transfers through a closely held corporation when the transfer of stock to the debtor's spouse was facilitated by the debtor in his role as sole shareholder, officer, and director of the corporation.); *In re Arbogast*, 466 B.R. 287, 312 (Bankr. W.D. Pa. 2012) (finding that direct deposits into a jointly held account constituted transfers that debtor made himself notwithstanding that the debtor made such transfers indirectly.).

As set forth above, the Trustee argues that the joint titling of the House constituted a "gift" to the non-debtor spouse. The statute contemplates that a "gift" may constitute a fraudulent conveyance, and, under South Carolina law, the titling of property in the name of both spouses when only one spouse pays or incurs a legal obligation to pay the purchase price is presumed to be a "gift." In *Green v. Green,* the South Carolina Supreme Court stated:

> The general rule is that when real estate is conveyed to one person and the consideration paid by another, it is presumed that the party who pays the purchase money intended a benefit to himself, and accordingly a resulting trust is raised in his behalf. But, when the conveyance is taken to a [spouse], for whom the purchaser is under legal obligation to provide, no such presumption attaches. On the contrary, the presumption in such case is that the purchase was designed *as a gift or*

12

> *advancement* to the person *to whom the conveyance is made*. This presumption, however, is one of fact and not of law and may be rebutted by parol evidence or circumstances showing a contrary intention.

117 S.E.2d 583, 586 (S.C. 1960) (emphasis added) (citations omitted); *see also In re Macdonald*, 622 B.R. 837, 856 (Bankr. D.S.C. 2020) (stating that "the presumption of a resulting trust does not arise when the property is titled in a spouse, child or other dependent of the purchasing party, and it is presumed a gift or advancement was intended in such a situation.") (citation omitted); *Lollis v. Lollis*, 354 S.E.2d 559, 561 (S.C. 1987) (holding that the presumption of a gift attaches in cases where the wife provides the purchase money and the husband takes title); *Legendre v. S.C. Tax Comm'n*, 56 S.E.2d 336, 338 (S.C. 1949) (finding there was a gift from wife to husband of a one-half interest in the home where wife's funds were used to purchase the home, which was titled jointly in the names of the wife and husband). As the Fourth Circuit has affirmed, the presumption that a gift was intended "is one of fact and not of law," which can be rebutted by clear and convincing evidence as to the intent of the transfer. *In re Pfister*, 749 F.3d at 298-99 (quoting *Caulk v. Caulk*, 43 S.E.2d 600, 603 (S.C. 1947)) (noting that the party arguing that a gift was not intended must offer evidence that (1) it paid for the property (or committed to pay for the property), (2) with the intent to own it, (3) on the date of purchase).

This case presents a not uncommon set of facts where spouses finance the purchase of a home, titling it jointly in both of their names, but for some reason or another the promissory note to the bank that extended the financing is solely in the name of one of the spouses. As Ms. Oleksy's counsel raised at the hearing on the Motions, an equitable argument exists that allowing the Trustee to avoid such joint titling in the house would be tantamount to ignoring the reality of marriage. However, viewing the facts of the Complaint in the light most favorable to the Trustee, based on the broad construction of the Statute of Elizabeth by state courts as set forth above, and given that

an issue of fact remains to the extent that the joint titling of the property can be viewed as a "gift," there exists substantive disputes that warrant this matter to proceed further.[7] Accepting all the allegations of the Complaint as true, the Court finds that the Trustee has adequately alleged a transfer from the Debtor to Ms. Oleksy, which serves as the basis for a claim under the Statute of Elizabeth. Since Defendants have asserted no other grounds to grant them judgment on the merits at this time, the motions for judgment on the pleadings pursuant to Fed. R. Bankr. P. 7012(c) are denied.

**IT IS, THEREFORE, ORDERED:**

1. The Motions for Judgment on the Pleadings filed by Defendants are hereby denied; and

2. The Plaintiff and Defendants shall have ten (10) days from the entry of this Order to file an Adversary Proceeding Report as previously required by order entered on July 25, 2022.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**11/02/2022**



Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina

Entered: 11/02/2022

---

[7] Fed. R. Civ. P. 12(i), which applies to this proceeding pursuant to Fed. R. Bankr. P. 7012(b), provides that "a motion under Rule 12(c) must be heard and decided before trial unless the court orders a deferral until trial."